# 13-4510-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

SUSAN CUOMO, individually and as administratix for the Estate of
JOSEPH CUOMO,

*Plaintiff-Appellee,*

—against—

CRANE CO.,

*Defendant-Cross Defendant-Appellant,*

*(Caption continued on inside cover)*

—————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

ALANI GOLANSKI
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
(212) 558-5500

*Attorneys for Plaintiff-Appellee*

AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC., ATWOOD & MORRILL COMPANY, AURORA PUMP COMPANY, BLACKMER, BW/IP, INC., and its wholly owned subsidiaries, BYRON JACKSON PUMPS, CBS CORPORATION, successor by merger to CBS CORPORATION, f/k/a VIACOM INC., f/k/a WESTINGHOUSE ELECTRIC CORPORATION, CLEAVER BROOKS COMPANY, INC., FMC CORPORATION, AMERICA STANDARD INC., FOSTER WHEELER, L.L.C., GARDNER DENVER, INC., GENERAL ELECTRIC COMPANY, GOULDS PUMPS, INC., IMO INDUSTRIES, INC., INGERSOLL-RAND COMPANY, OWENS-ILLINOIS, INC., RAPID-AMERICAN CORPORATION, TRANE U.S. INC., f/k/a AMERICAN STANDARD INC., U.S. RUBBER COMPANY (UNIROYAL), WARREN PUMPS, L.L.C., WEINMAN PUMP & SUPPLY CO., YARWAY CORPORATION,

*Defendants-Cross Defendants,*

AMCHEM PRODUCTS, INC., now known as RHONE POULENC AG COMPANY now known as BAYER CONSCIENCE INC., UNION CARBIDE CORPORATION,

*Defendants-Cross Claimants-Cross Defendants.*

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Counterstatement of the Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Counterstatement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Counterstatement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

I.   Crane Failed to Fulfill its Burden of Establishing
     Federal Subject Matter Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

     A.   Crane's Failure to Proffer a Single Procurement Document
          or Contract Renders It Unable to Meet Its Burden.. . . . . . . . . . . . . . .  20

     B.   The Specifications in the Record Were Not in Conflict
          With Crane's State Law Duty to Warn. . . . . . . . . . . . . . . . . . . . . . . . . .  28

II.  Crane Failed to Prove Any of the Three *Boyle* Elements
     Requisite to Establishing a Conflict.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

     A.   Crane Did Not Establish the First *Boyle* Element.  . . . . . . . . . . . . . . .  34

     B.   Crane Did Not Establish the Second *Boyle* Element. . . . . . . . . . . . . .  40

     C.   Crane Did Not Establish the Third *Boyle* Element.  . . . . . . . . . . . . . .  41

III. Crane's Claims on Appeal Are Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

Certification of Compliance Pursuant to Rule 32(a)(7)(C)

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

Aleutain Constructors v. United States, 24 Cl. Ct. 372 (1991). . . . . . . . . . . . . . . . . .  21

Appeal of Robert McMullan & Son, Inc., Contract № Nby 63218,
№ 68-1 BCA P 6940 (A.S.B.C.A.), ASBCA № 11408,
1968 WL 4905 (Mar. 20, 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Appeal of Valley Const. Co., Contract № Nby–67575, № 68-2 BCA P 7293
(A.S.B.C.A.), ASBCA № 13277, 1968 WL 827 (Sept. 26, 1968). . . . . . . . . . . . . . . .  22

Appeal of Whitlock-Dunn, Inc., Contract № GS-04-B-7957,
GSBCA № 1007, 1963 WL 890 (Oct. 7, 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Blake Constr. Co. v. United States, 987 F.2d 743 (Fed. Cir. 1993). . . . . . . . . . . . . . .  21

Boyle v. United Tech. Corp., 487 U.S. 500 (1988). . . . . . . . . . . . . . . . . . . . . . . . .  passim

Brinson v. Raytheon Co., 571 F.3d 1348 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . .  40

Bristol & Martin, Inc. v. United States, 110 F. Supp. 262
(U.S. Ct. Cl. 1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Case v. American Standard, Inc., № 2:11-67266-ER, 2013 WL 5548804
(E.D. Pa. July 31, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Colorado v. Symes, 286 U.S. 510 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Dika v. Gonzalez, 201 Fed. Appx. 37 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . .  5

Donn v. A.W. Chesterton Co., № 2:10-62071-ER, 2013 WL 2477049
(E.D. Pa. May 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Fortier v. AMPCO-Pittsburgh Corp., № 3:07-cv-00005 (WWE),
2007 WL 735703 (D. Conn. Mar. 7, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 30

Getz v. Boeing Co., 654 F.3d 852 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . .   32

Granier v. Northrup Grumman Ship Sys., № 06-3738 Section "L"(1),
2008 U.S. Dist. LEXIS 103245 (E.D. La. Dec. 12, 2008). . . . . . . . . . . . . . . . . . . 30-32

Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187
(D. Mass. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29-30, 32

Holdren v. Buffalo Pumps, Inc., 614 F. Supp. 2d 129 (D. Mass. 2009). . . . . . . . . 31-32

Horrie v. A.W. Chesterton Co., № 13 C 8161, 2014 U.S. Dist. LEXIS
68847 (N.D. Ill., May 19, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26, 47

In re "Agent Orange" Product Liability Litig.: Isaacson v. Dow
Chemical Co., 304 F. Supp. 2d 404, aff'd, 517 F.3d 129 (2d Cir. 2008). . . . . . . . . . .   33

In re "Agent Orange" Product Liability Litig.: Twinam v. Dow
Chemical Co., 517 F.3d 76 (2d Cir. 2008). . . . . . . . . . . . . . . . . 16, 23, 25, 36-37, 40, 44

In re Asbestos Litig.: Seitz v. Adel Wiggins Group, 661 F. Supp. 2d 451
(D. Del. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

In re Brooklyn Navy Yard Asbestos Litig. (Joint Eastern & Southern
Dist. Asbestos Litig., 971 F.2d 831 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . .   28

In re Consolidated Devices, Inc., № B- 232651 (Comp. Gen.),
88-2 CPD P 606, 1988 WL 228284 (Dec. 20, 1988). . . . . . . . . . . . . . . . . . . . . . . .   22

In re Joint Eastern and Southern Dist. New York Asbestos Litig.: Grispo v.
Eagle-Picher Indus., Inc., 897 F.2d 626 (2d Cir. 1990). . . . . . . . . . . . . . . . 33-35, 46-47

In re Methyl Tertiary Butyl Ether Products Liability Litig:
California v. Atlantic Richfield Co., 488 F.3d 112 (2d Cir. 2007). . . . . . . . . . . . . . 18-19

In re New York City Asbestos Litig.: Dummitt v. A. W. Chesterton,
960 N.Y.S.2d 51, 2012 N.Y. Misc. LEXIS 4057
(N.Y. Sup. Ct., Aug. 20, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Isaacson v. Dow Chemical Co., 517 F.3d 129 (2d Cir. 2008). . . . . . . . . . . . . 16, 23-25

Kristzal v. Leavitt, № 05-1173-CV-W-HFS, 2006 WL 1779015
(W.D. Mo., June 26, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Leite v. Crane Co., Nos. 12-16864 & 12-16982, 2014 WL 1646924
(9th Cir. Apr. 25, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Levy v. A. O. Smith Water Prods. Co., № 12-cv-05152-SAS,
2012 WL 2878140 (S.D.N.Y. July 13, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

Lewis v. Babcock Indus., Inc., 985 F.2d 83 (2d Cir. 1993). . . . . . . . . . . . . . 17, 34, 40

Luo v. Mikel, 625 F.3d 772 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mesa v. California, 489 U.S. 131, 109 S. Ct. 959 (1989). . . . . . . . . . . . . . . . . . . . 19

Morgan v. Bill Vann Co., № 11-0535-WS-B, 2013 WL 5657512
(S.D. Ala., Aug. 30, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pfeifer v. John Crane, Inc., 220 Cal. App. 4th 1270 (Cal. Ct. App. 2013). . . . . . . . . 15

Polesky v. A. C. & S., Inc., № 98 CIV. 4841 (DLC), 1998 WL 633666
(S.D.N.Y. Sept. 15, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Quirin v. Lorillard Tobacco Co., № 13 C 2633, 2014 U.S. Dist. LEXIS
18744 (N.D. Ill. Feb. 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Remler Co. v. United States, 179 Ct. Cl. 459 (1967). . . . . . . . . . . . . . . . . . . . . . . 21

Ruffin v. Armco Steel Corp., 959 F. Supp. 770 (S.D. Tex. 1997),
vacated on other grounds, № H-96-4480, 1999 U.S. Dist. LEXIS 23191
(S.D. Tex. Jan. 29, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Ruppel v. CBS Corp., 701 F.3d 1176 (7th Cir. 2012). . . . . . . . . . . . . . . 26, 34, 41, 45-47

Sage v. Fairchild-Swearingen Corp., 70 N.Y.2d 579 (1987). . . . . . . . . . . . . . . . . . 35-36

Saloum v. United States Citizenship & Immigration Servs., 437 F.3d 238
(2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Seneca Battery Corp. v. United States, 121 F. Supp. 337
(W.D.N.Y. 1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sublett v. Air & Liquid Systems Corp., № 11-433-GPM,
2011 U.S. Dist. LEXIS 70908 (S.D. Ill. June 30, 2011). . . . . . . . . . . . . . . . . . . . . . . 27

Sweredoski v. Alfa Laval, Inc., C.A. № PC-2011-1544,
2013 R.I. Super. LEXIS 185 (Oct. 21, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Willingham v. Morgan, 395 U.S. 402 (1969). . . . . . . . . . . . . . . . . . . . . . . . 4, 18-19, 25


**Rules and Statutes:**

28 U.S.C. § 1442. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18, 38, 45

28 U.S.C. § 1446. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

28 U.S.C. § 1447. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


**Other Authorities:**

Am. L. Prod. Liab. 3d, Part 27, ch. 122. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

John Cibinic, Jr., & Ralph C. Nash, Jr., Formation of Government
Contracts (3d ed., 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

W. Noel Keyes, Government Contracts Under the Federal Acquisition
Regulation (3d ed., 2003) (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## COUNTERSTATEMENT OF THE ISSUE PRESENTED

In this case in which defendant Crane claims that the Navy caused it not to warn Mr. Cuomo that its asbestos-containing products were ultrahazardous, but where:

(1)    Crane universally refused to warn any possible product user anywhere, including in both the private/commercial and public/government spheres;

(2)    the removal papers expressly admit that the Navy was unaware of the hazards of products such as Crane's, notwithstanding Crane's thoroughgoing knowledge of those hazards;

(3)    Crane has failed to proffer a single procurement document or government contract under which it may have acted;

(4)    the Navy required manufacturers to supply their own warnings of product-related hazards in compliance with state law; and

(5)    Crane failed to show that any federal contractual obligation or federal interest conflicted in the slightest with state law tort duties to warn,

did the district court correctly remand this action to its original and proper state court forum?

## COUNTERSTATEMENT OF THE CASE

This is an asbestos-related action for personal injuries and wrongful death, commenced in the Supreme Court of the State of New York on or about November 28, 2012 [A-36-38].[1]  The case-specific complaint incorporates by reference the causes of action as stated in the Weitz & Luxenberg Standard Personal Injury Complaint № 7 and Standard Wrongful Death Complaint № 7, both on file in the New York City Asbestos Litigation [A-38].  Those standard complaints allege solely failure-to-warn causes of action with respect to any injurious asbestos exposures that may have occurred at any government facility or aboard any government vessel or vehicle.  Defendant Crane Co. ("Crane") failed to include in the removal record the underlying substantive "standard" complaint, and the record thereby fails to include a single cause of action as alleged by plaintiff.

Crane did, however, include in its removal papers a mountain of random military and U.S. Navy specifications, manuals, and book excerpts from various random time periods.  Although the specifications and papers submitted by Crane are voluminous, they constitute only a fraction of the Department of Defense's

---

[1]      Numbers in brackets following "A" refer to pages in the Joint Appendix submitted by appellant Crane; numbers in brackets following "D/B" refer to the Brief For Defendant-Cross Defendant Appellant."

2

"thousands of military specifications and standards in its procurements."[2]  But more significantly, Crane failed to include a single procurement document or contract that may have governed its own interactions with the Navy at any time, or any such contract whatsoever.  Solicitation and procurement documents, and the ultimate government contracts, incorporate certain specifications and omit masses of other specifications.  This is the way the procurement process proceeds.  Yet the record amassed by Crane is wholly insufficient – hence fails to raise a "colorable" claim – with regard to the nature, tenor or terms of any relationship Crane may have had with the Navy.

Moreover, with a half-century or more of specifications and documents available to it, Crane wholly failed to proffer a single one attesting to any Navy interference with, involvement in, dictation of, or prohibition of, any health or safety warning addressing the hazards of asbestos exposure that may have been suggested, proposed or affixed by the product manufacturer.  Quite the opposite, the documentary proof demonstrates that the Navy expected, invited, and required product manufacturers to comply with home state warnings requirements, and to fulfill their duties to warn under the local tort regimes.  Federal interests, in other words, were not aligned against the well-being of the thousands of American men

---

[2] JOHN CIBINIC, JR., & RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 354 (3d ed., 1998).

and women serving their country by building and maintaining the Navy's capabilities.

Accordingly, having carefully examined all of the pleadings and proofs submitted by defendant Crane and by the plaintiff on the issue of subject matter jurisdiction, district court Judge Shira A. Scheindlin concluded that "Crane has provided no evidence indicating that the Navy either forb[ade] an asbestos warning or actively dictated the substance of any proposed asbestos warning. Crane fails to rebut the obvious inference: that it never tried to warn about asbestos at all" [A-1982 (internal quotations omitted)].

In this appeal Crane argues both that it need not have submitted any evidence at all toward establishing federal officer removal jurisdiction [D/B, at 20], and that by considering all of the evidence – most of its submitted by Crane – the district court somehow "engaged in an unnecessary and improper fact-finding excursion" [D/B, at 24]. While Crane's aversion to the actual facts is understandable, it is also well-settled that federal officer jurisdiction is reviewed based on the relevant evidence, all of which such "material should have appeared in the petition for removal." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969). For the same reason, the district court's review of such factual materials, in determining whether defendant has met its burden of sufficiently establishing a basis for subject matter jurisdiction, was required.

In addition to submitting the hundreds of pages of documentary materials, the substance of which clearly contradicts Crane's claim that it has a colorable

4

government contractor defense on the failure-to-warn cause of action, Crane retained the services of retired Rear Admiral David P. Sargent, Jr., now president of a consulting and business entity called Sargent Enterprises, Inc. [A-115], and Dr. Samuel A. Forman, who admitted both that Navy specifications required that manufacturers supply health warnings "as is consistent with real need" [A-1136-37], and that at all relevant times the Navy naively believed that ultrahazardous products such as Crane's posed no health hazard [A-1138-40]. Dr. Forman's latter admission alone deprives Crane of the ability to exploit the government contractor defense.

In the final analysis, Crane's claims of federal subject matter jurisdiction are speculative and illusory. Analogous to this Court's instruction concerning appellate jurisdiction in *Dika v. Gonzalez*, 201 Fed. Appx. 37 (2d Cir. 2006), a conclusory or speculative assertion "does not itself establish a colorable [federal] claim . . . even if a petitioner 'dresses up' his claim in the language of" the government contractor defense. 201 Fed. Appx. 37, 38 (omitting citations); *Saloum v. United States Citizenship & Immigration Servs.*, 437 F.3d 238, 243-44 (2d Cir. 2006).

## COUNTERSTATEMENT OF THE FACTS

Plaintiff's complaint names Crane as one of several defendants [A-36], and alleges Mr. Cuomo's exposure to toxic asbestos-containing materials at government and non-government sites [A-44]. With respect to any exposures occurring at a

5

government site, the complaint alleges solely a failure-to-warn products liability cause of action. Claiming federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), Crane caused this action to be removed to federal court on January 11, 2013 [A-19, 26].

Crane affixed to its Notice of Removal nearly two thousand pages of materials, consisting largely of excerpts from various military specifications [A-19 to A-1607]. Not a single one of those pages, however, pertained to any specific contract or other Navy procurement document involving Crane. At the same time, Admiral Sargent himself conceded that "[a]n *acquisition contract* typically *invokes* many different MILSPECs, various technical documents such as drawings prepared by the Navy's Bureau of Ships. Taken together, the contract and the *incorporated materials* present all details of what the Navy requires" [A-125 (emphasis added)]. Absent the inclusion in the record by Crane of even a single relevant contract, it is impossible – hence there is no legally sufficient basis – to conclude "what the Navy require[d]" of Crane.

The specification excerpts amassed by Crane established that the Navy relied upon its equipment suppliers to affix warnings about any health hazards associated with use of, or exposure to, those products, or to otherwise comply with state tort law duty-to-warn obligations. Avoiding this factual reality, Crane's Notice of Removal states that its expert Dr. Forman "has 'not located a single instance in which the Navy, at any time period relevant to this case, instructed or permitted a supplier

6

of equipment, such as valves, to a vessel or facility to affix or provide any asbestos-related warning with its equipment'" [A-23].

Although Dr. Forman may not have located a single specific instance in which the Navy instructed an equipment supplier to include an asbestos-related warning, neither did Crane proffer a single instance in which the Navy prohibited, interfered with, or became involved at any level in the issuance of such an asbestos-related warning by an equipment supplier. Nor is there an iota of evidence to that effect.

Instead, the record includes, as one example, a Military Specification dated September 10, 1957 (MIL-M-15071-C(SHIPS)), which qualified for incorporation into some contracts if the specification was in effect on the date of the invitation for bids, or solicitation of sealed bids [A-917-18].[3] The Specification prescribes the minimum product-related data the manufacturer should supply, such as "Navy type designation," product dimensions, weights, and allowable clearances, temperatures and pressure ranges, as well as installation and operating instructions [A-922-23]. When it comes to health and safety hazards, however, the Navy instructs the manufacturer to provide "clearly worded" warnings "so as to be readily understandable to relatively inexperienced personnel" [A-926]. These should include "personal injury" warnings, included "as sparingly as is consistent with real need"

---

[3]       *See Seneca Battery Corp. v. United States*, 121 F. Supp. 337, 338 (W.D.N.Y. 1953).

7

[*id*].[4]

The record includes the next similar, superseding Military Specification, dated June 6, 1961 (MIL-M-15071-D(SHIPS)) [A-970]. This Specification similarly requires that contractors supply personal injury warnings with their products as may be "consistent with real need" [A-974]. As with the predecessor 1957 Specification (to the extent this may have been incorporated into any particular government procurement or contract), no limitation or restriction is placed on the sort of precautions that should accompany the product pertaining to any hazard that might arise during the installation, use, maintenance or product-replacement process.

The record further includes a copy, in relevant part, of the Navy's *Interim Military Specification: Book, Instruction, Preparation, Contents and Approval* (MIL-B-15071A(SHIPS), effective October 20, 1952. This Specification prescribes generally that the manufacturer should include instructions, based on information known to the manufacturer, "stressing the importance of properly maintaining any safety devices, interlocks, provided to prevent damage to equipment or injury to

---

[4]     This Specification was included in part as an exhibit to the Sargent affidavit proffered by Crane. Sargent omitted much of the Specification, however, including a section titled "Communications" [Table of Contents: A-953]. In all events, notwithstanding his speculations on Crane's behalf that "the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves, pumps or related parts or items supplied during the 1940s, 1950s, or 1960s" [A-140], now, confronted with an actual specification to the contrary, Sargent was forced to contradict his earlier claims [A-141 (regarding the specifications requirement that contractors supply "cautions" and "warnings," saying "[t]he MILSPEC clearly states that these terms will be used sparingly and as adjuncts to text")].

personnel" [A-1693]. This provision thereby invited and required that contractors inform equipment users of the need to maintain safety measures that could prevent injury to personnel.

Also critically significant, and contrary to the insupportable claims advanced by Crane's experts Dr. Forman and Admiral Sargent, is the language of the Navy's *Consolidated Hazardous Items List*, dated October 1, 1969 [A-1703]. Evidencing the Navy's concern that workers and service personnel obtain the appropriate safety information, this document announces the Navy's purpose "to warn users and handlers of the potential dangers involving the use of" various classes of hazardous materials [A-1705]. Although difficult to read, the right-hand column includes toxic dusts as one of the categories requiring the manufacturer's precautionary instructions [*id.*]. Critically, the 1969 document further explains that any warnings or labels noted in the specifications are intended only to "*supplement* . . . any other label/marking applied by the MCA (Manufacturers Chemist Association), NFPA (National Fire Protective Association), and/or manufacturer [*id.* (Navy's emphasis)]. Hence, by the last clause just quoted, the Navy deemed the manufacturers' issuance of warnings to be the paramount front in the effort at safeguarding worker health and well-being.

Further, the very Uniform Labeling Program document issued by the Navy September 24, 1956 [A-1446], and which Dr. Forman desperately strains to misconstrue on behalf of Crane [A-1132-35], expressly provides that

9

[t]he purpose of this Instruction is to standardize on labeling requirements for hazardous chemical products during the usage stage, and to provide selective labels which will contain pertinent information designed to warn *users* of the potential dangers involved. . . . This instruction is *not* intended to govern: . . . the type of labels to be affixed by the manufacturer. (These are governed by State and Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate. In addition, most major manufacturers of chemicals abide by the "Warning Label Guides" published by the Manufacturing Chemists' Association).

[A-1447 (Navy's emphasis)].

Included among the Manufacturing Chemists' Association's warnings guides are those pertaining to hazardous industrial dusts such as asbestos [*see* A-1678].[5] As established by the just-referenced document, even the Navy's Uniform Labeling Program did not impinge upon the contractor's inclusion of other warnings as dictated by state law and regulations. Quite the contrary, while the Program sought to standardize warnings *supplied by the Navy*, it affirmatively advanced the Navy's expectation that its contractors would affix their own warnings in compliance with state law. "Defendants, therefore, were free to include warnings not dictated by the

---

[5]     *See* AM. L. PROD. LIAB. 3d, Part 27, ch. 122 ("Asbestos Products), § 122.60 ("Gaskets") (noting certified industrial hygienist's testimony "about the Manufacturing Chemists' Association's L-1 Manual for providing warnings for hazardous dust"). The Association was significantly concerned with hazardous industrial dusts. *E.g.,* Manufacturing Chemists Association, Minutes of Meeting: Air Quality Committee (Sept. 23-24, 1969), at http://www.chemicalindustryarchives.org/search/PDFs/cma/19690923_00001666.pdf.

10

Navy."[6]

Additionally, the full record of specifications has been analyzed by Captain Arnold P. Moore, who has helped design six major classes of naval warships and been instrumental in the modernization of three additional classes [A-1669]. Captain Moore's factual observations and understandings establish, beyond any reasonable doubt, that the Navy afforded its equipment contractors the discretion, and indeed encouraged and "required" them, to warn about hazards [A-1675].

Captain Moore explains, as illustrative of the Navy's expectation that its contractors would take the initiative to issue adequate warnings, that manufacturers sometimes met this expectation by submitting drawings that "specifically require[] a boiler component to be equipped with a warning plate," hence demonstrating that "the U.S. Navy did not prohibit manufacturers from providing warning plates when manufacturers deemed them necessary" [A-1678-79].

Crane proffered not one iota of evidence that any such product specification as *drawn up by the manufacturer* and including a warning label or plate had ever been rejected by the Navy. Nor is there any evidence that any contracting officer ever deemed such a product, upon delivery to the Navy, not to have been in substantial compliance with Navy requirements. In this respect, there is not one single Navy

---

[6] *Fortier v. AMPCO-Pittsburgh Corp.,* № 3:07-cv-00005 (WWE), 2007 WL 735703, at *2 (D. Conn. Mar. 7, 2007) (granting motion to remand to state court).

specification in the record that would have disallowed a finding, by the contracting officer or any other Navy procurement agent, of substantial compliance in the event the contractor chose to comply with state law by warning about the hazards of its product's asbestos-containing components.

> To the contrary, as Captain Moore attests,

> beginning in the 1930's and continuing throughout the 1940's, 1950's and 1960's and to the present time, Navy specifications and standards specifically required equipment manufacturers and other vendors providing materials to the Navy to provide warnings concerning hazards associated with their products. The hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempted from these requirements. I attest, based both on my own experience and the reading of Navy requirements and specifications that the Navy relied heavily upon its manufacturers and vendors to identify hazards associated with their products.

[A-1674].

Discussing the August 16, 1954 Military Specification MIL-T-15071B (SHIPS) [Moore: A-1675; Specification: A-881], Captain Moore notes its "requirement for safety notices for hazards in sections 3.5.1.1 and 3.6.1.1. Section 3.5.1.8.1 also contains the same requirement to provide instructions to maintain safety devices. Section 3.2 not only requires shipping two copies of the manual with each unit of equipment but also provides for distribution throughout the Navy. Section 3.6.1.3 requires 'precautions' to be identified during installation of equipment. Section 3.4.5.1 contains the same language as the 1952 version for preparation of new pages

12

for new information" [A-884-93].

In contrast, Admiral Sargent and Dr. Forman offered speculative inferential leaps to the effect that "warnings were not neither sought nor welcome from manufacturers" [A-140]. According to Dr. Forman, "[c]onsistent with my experience that the Navy saw little value, and much potential for confusion, in extensive use of caution labels addressing common hazards or conditions, particularly when no threat of immediate injury or harm to individuals or equipment was present, the Navy's [*sic*] directed that warnings in technical manuals be 'sparing'" [A-1137]. By virtue of this testimony, however, Crane has admitted that the Navy "directed" manufacturer/contractors to supply warnings – *the manufacturer's own warnings, as required under State law* – when unprotected product use or exposure carried the risk of serious and life-threatening physical injury.

Dr. Forman further admitted, in his affidavit submitted on behalf of Crane, that the Navy had a far inferior understanding and appreciation than did manufacturers such as Crane, regarding the hazards associated with use of their product – in particular the ultrahazardous asbestos-laden dusts emanating from gaskets and packing accompanying valve and pump products. According to Forman, the Navy naively and incorrectly viewed those products as relatively innocuous. In this respect, Dr. Forman stated:

With specific reference to potential hazards associated with the handling

13

of asbestos-containing gaskets and packing, I am aware from my
research and from my personal experience in the Navy that these
materials were regarded as negligible sources of asbestos exposure. For
example, a December 9, 1968 U.S. Department of the Navy
Memorandum regarding "Hazards of Asbestos" stated that

> [a]ll of the asbestos in [gasket and packing materials] is
> fabricated as cloth, rope or compressed sheet with binders,
> so that the items are not friable when they are cut. Thus,
> these items do not cause dust in shipboard applications. In
> addition, in many instances, they are received already
> incorporated in the finished assembly such as a valve, and
> do not require fabrication by the shipyard. For these
> reasons, packings and gaskets containing asbestos are not
> considered to be a significant health hazard.

[A-1138-39].

Dr. Forman continued that the Navy's lack of any awareness of a danger from
asbestos in gaskets and packing "was reaffirmed" in certain literature asserting there
was "(n)o health hazard in forms used in shipyard applications" [A-1139]. Moreover,
the Navy subscribed to the view that "'(a)sbestos fiber' and '(c)ompressed asbestos
fiber' present '(n)o health hazard in forms used in shipyard applications'" [*id.*].
Consequently, said Dr. Forman, there was a "lack of concern for asbestos exposure
from asbestos-containing gaskets and packing expressed in Navy documents" [A-
1139-40].

The reality was quite different, packings and gaskets containing asbestos were
an enormous health hazard, and Crane (but not the Navy) was clearly aware of this

14

fact.[7]  Further, Crane could not be subject to failure-to-warn products liability unless

it had knowledge superior to what Dr. Forman claims for the Navy.  For Crane's

liability rests on its awareness, and the foreseeability to Crane, that deadly asbestos

fibers would in fact be released during installation, use and/or maintenance of its

valve equipment.  Therefore, Crane's removal allegations on their face, by virtue of

incorporating Dr. Forman's claims, effectively assert that the Navy did not know as

much as Crane knew about the hazards of the Crane equipment.  Nevertheless, Crane

failed to warn the Navy, the plaintiff, or anyone about those hazards.


## SUMMARY OF THE ARGUMENT

Defendant Crane failed to fulfill its burden of establishing federal officer

removal jurisdiction.  Of the many thousands of military specifications issued by the

---

[7]          *See, e.g., Morgan v. Bill Vann Co.*, № 11-0535-WS-B, 2013 WL 5657512, at *1 (S.D. Ala., Aug. 30, 2013) ("Throughout his working life, Morgan was exposed to asbestos from Crane Co. valves when the packing was replaced.  As Morgan explained, . . . 'Most time it just comes out in little pieces. So . . . there's your dust that gets into the area and air"); *Donn v. A.W. Chesterton Co.*, № 2:10-62071-ER, 2013 WL 2477049 (E.D. Pa. May 9, 2013) ("There is evidence that Decedent worked around gaskets, packing, and insulation used with Crane Co. valves on numerous occasions, on various submarines, and that the gaskets, packing, and insulation were disturbed in his presence, such that respirable dust was generated"); *Case v. American Standard, Inc.*, № 2:11-67266-ER, 2013 WL 5548804, at *1 (E.D. Pa. July 31, 2013) ("Mr. McLean testified that Crane Co. manufactured valves with asbestos-containing gaskets and packing up until the late 1980s, that Crane Co. both knew and could foresee that gaskets and packing on its valves would need to be replaced and that the removal would be a process that could create dust"); *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1301-02 (Cal. Ct. App. 2013) (noting that a similarly-situated defendant "knew that its customers used the products in ways capable of generating dangerous levels of asbestos dust,  yet it neither attempted to determine such levels nor issued warnings[, and that defendant] knew that users like Pfeifer replaced gaskets using power wire brushes and compressed air, which generated asbestos dust and caused the old gaskets to disintegrate").

Navy and the Department of Defense, Crane submitted some but not others, and failed to submit a single relevant procurement document or government contract representative of the terms and relationship it may have had with the Navy. This Court's rulings have demonstrated the importance of defendant's producing at least some illustrative procurement documents or contracts when alleging the government contractor defense.[8]

Even assuming *arguendo* that Crane had contracts with the Navy for the supply of the asbestos-containing valve products that harmed Mr. Cuomo, and that Crane supplied injurious products pursuant to those contracts, Crane would still not have met its burden of establishing federal officer jurisdiction in this failure-to-warn products liability case. The specifications in the record, even assuming their specific relevance in this case, do not establish a "significant conflict" with state tort law and the duty to warn of ultrahazardous product defects. The federal interest simply did not conflict, or in any way interfere, with Crane's state law duty to warn.[9]

Nor has Crane satisfied the three criteria set forth by the Supreme Court in *Boyle*, for finding the requisite conflict triggering federal officer jurisdiction. As an interpretive matter, the sort of indicia the courts rely upon to show government

---

[8]     *In re "Agent Orange" Product Liability Litig.: Twinam v. Dow Chemical Co.*, 517 F.3d 76 (2d Cir. 2008); *Isaacson v. Dow Chemical Co.*, 517 F.3d 129 (2d Cir. 2008).

[9]     *Boyle v. United Tech. Corp.*, 487 U.S. 500, 507-08 (1988).

16

involvement in product design must parallel those used to determine whether the Government concerned itself with product health warnings. The jurisdictional inquiry must be symmetrical as between design defect and failure-to-warn claims.

First, the documents in the record do not support Crane's jurisdictional claim that the Government approved reasonably precise specifications such that Crane was required to omit health and safety warnings for its asbestos-containing products, or that the Navy approved of any such omissions on Crane's part. Second, nor did Crane sufficiently show that the Navy "received exactly what it sought,"[10] namely, a product that omitted any warnings about its ultrahazardous nature; for Crane failed to show that this is what the Navy sought.

Third, there is no dispute that Crane did not warn the Navy or anyone about the hazards associated with its asbestos-containing products. There is no dispute, for purposes of the present record, that Crane had full knowledge of those hazards. Yet Crane's expert admitted that the Navy had no appreciation of the hazards associated with Crane's asbestos-containing valve products. Therefore, Crane failed to establish that the Navy knew as much or more than did Crane about the hazards at issue here.

Finally, Crane's claims in its Brief are without merit. The cases upon which Crane relies are distinguishable, or out of step with this Court's jurisprudence.

---

[10] *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 89 (2d Cir. 1993).

17

**ARGUMENT**

## I. CRANE FAILED TO FULFILL ITS BURDEN OF ESTABLISHING FEDERAL SUBJECT MATTER JURISDICTION

Defendant Crane has the burden of establishing federal officer removal jurisdiction. It is well-settled that "'[t]he burden is upon him who claims the removal plainly to set forth by petition made, signed, and unequivocally verified by himself all the facts relating to the occurrence, as he claims them to be, on which the accusation is based.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig: California v. Atlantic Richfield Co.*, 488 F.3d 112, 124 (2d Cir. 2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 518-19 (1932)). In determining whether jurisdiction is proper, the Court looks "only to the jurisdictional facts alleged in the Notices of Removal." *MTBE Prods. Liab. Litig.*, 488 F.3d at 124.

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), a defendant who is not a federal officer or agency must satisfy three elements to meet its burden of establishing subject matter jurisdiction requisite to having the suit against it removed from state to federal court. First, it must show that it is a "person" within the meaning of the statute. Second, it must show that it was "acting under" a federal officer, and must thereby establish the existence of "a causal relationship between the charged conduct and asserted official authority." *Willingham v. Morgan*, 395 U.S. 402,

18

409 (1969). Finally, the defendant must raise a colorable federal defense. *Mesa v. California*, 489 U.S. 131, 109 S. Ct. 959, 965 (1989).

Crane Co. qualifies as a "person" under the federal officer removal statute. However, it has wholly failed to fulfill its burden under the second jurisdictional prong, namely, by showing any causal relationship between its failure to warn and the asserted federal authority. *E.g., In re MTBE Prods. Liab. Litig.*, 488 F.3d 112, 130 (holding that the federal officer removal statute did not support removal because "the defendants have not met their burden of providing 'candid, specific and positive' allegations that they were acting under federal officers when they added MTBE" (citation omitted)).[11] Nor has Crane established a colorable federal government contractor defense in this case, as the district court concluded [A-1977 (Crane has not shown that "state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions")].

---

[11] Because subject matter jurisdiction is at stake, plaintiff may now advance arguments that may not have been addressed in the motion practice below. *Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) ("Subject matter jurisdiction cannot be waived; thus a party can, for the first time on appeal, argue that a case does not belong in federal court, even if that party failed to challenge removal. . . . . The party asserting jurisdiction bears the burden of proving that the case is properly in federal court and that party may not be relieved of its burden by any formal procedure") (omitting citations); FED. R. CIV. P. 12(h)(3); 28 U.S.C. § 1447(c).

19

**A.** **Crane's Failure to Proffer a Single Procurement Document or Contract Renders It Unable to Meet Its Burden**

As part of its Notice of Removal, Crane proffered myriad, general federal specifications and various other publications. Even that large group of documents, however, constitute a mere fraction of the specifications and documents issued by the United States Navy and/or the Department of Defense, known until 1949 as the National Military Establishment. Indeed, the Government "used thousands of military specifications and standards in its procurements." JOHN CIBINIC, JR., & RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 354 (3d ed., 1998).

One reason that Crane failed to meet its burden of proving federal subject matter jurisdiction in this federal officer removal case is that Crane neglected to submit a single relevant procurement document, whether this be a solicitation, request for bids, or ultimate contract. Plaintiff is not taking the position that a removing defendant must locate and submit *all* such materials, or *all* contracts under which it may have operated. But absent its submission even of one single procurement document, it remains impossible, and an entirely speculative exercise, to attempt to discern the terms of Crane's relationship with the Government.

In this respect, for instance, federal law requires that agency or department requirements for a contract must be stated, to the extent practicable, in terms of the functions to be performed or the performance required. Some government contracts

20

very precisely incorporate design dimensions and specifications, and leave little to the contractor's discretion. This approach may then allow the Government to engage in a purely lowest bidder selection process.

In contrast, performance specifications are inherently more competitive than design specifications. As Professor Keyes has explained, "[w]henever the contractor retains the responsibility for the means and methods selected to achieve the end result, . . . the contractor has the contractual responsibility for preparing the detailed design of the product to meet the performance specification. It therefore has a large amount of discretion in manipulating all aspects of the product in meeting the performance specifications." W. NOEL KEYES, GOVERNMENT CONTRACTS UNDER THE FEDERAL ACQUISITION REGULATION § 11.2, at 274 (3d ed., 2003) (1986).[12]

Not uncommonly, government contracts contain both design and performance specifications in varying degrees. *Aleutian Constructors v. United States*, 24 Cl. Ct. 372, 379 (1991). Determining the balance between the two is critical in "help[ing] the court discuss the discretionary elements of a contract." *Blake Constr. Co. v. United States*, 987 F.2d 743, 746 (Fed. Cir. 1993).

Thus, Crane's submission of at least some small exemplary number of

---

[12]     Nor, by any means, did the use or incorporation of performance specifications commence with the adoption of the Federal Acquisition Regulations System in 1984. *E.g., Bristol & Martin, Inc. v. United States*, 110 F. Supp. 262, 262 (U.S. Ct. Cl. 1953); *Remler Co. v. United States*, 179 Ct. Cl. 459 (1967).

procurement materials – or even a single one – would have been critical on the issue of determining how much discretion, and in which areas, Crane may or may not have had in fulfilling its government contract responsibilities. Specifications and government publications, such as those proffered by Crane, are not probative in a vacuum. The question is which may have been incorporated in any contracts Crane executed with the federal government. *See, e.g., Appeal of Whitlock-Dunn, Inc.*, Contract № GS-04-B-7957, GSBCA № 1007, 1963 WL 890 (Oct. 7, 1963) ("This Standard Specification having been incorporated by reference in the contract specifications, . . ."); *In re Consolidated Devices, Inc.*, № B- 232651 (Comp. Gen.), 88-2 CPD P 606, 1988 WL 228284, at *2 (Dec. 20, 1988) ("the detailed specifications for the calibrators have been incorporated into the contract as they appeared in the RFP [request for proposals]"); *Appeal of Robert McMullan & Son, Inc.*, Contract № Nby 63218, № 68-1 BCA P 6940 (A.S.B.C.A.), ASBCA № 11408, 1968 WL 4905 (Mar. 20, 1968) ("the appellant must prevail if we find that the terms of NAVDOCKS specification 7Yi were not incorporated into the contract by reference"); *Appeal of Valley Const. Co.*, Contract № Nby–67575, № 68-2 BCA P 7293 (A.S.B.C.A.), ASBCA № 13277, 1968 WL 827 (Sept. 26, 1968) ("Specifications incorporated by reference impress an obligation for performance equally with express stipulations of the contract specifications proper, since that is the intent and purpose of incorporation").

This is not to say, however, that, had Crane's contracts with the Government

22

incorporated principally design specifications, these would necessarily weigh in favor of Crane's establishing a colorable federal defense on the state law failure-to-warn causes of action. From the sampling proffered by Crane, it appears unlikely that any such specifications would have dictated or interfered with the manufacturer's responsibility to warn about known hazards. Nevertheless, Crane's claim of subject matter jurisdiction would be all the weaker in the event that its contracts incorporated principally performance specifications.

In this further regard, Crane's corporate representative, its Vice-President Anthony Pantaleoni, averred in his Affidavit in support of Crane's Notice of Removal that, at some undisclosed time, with regard to some undisclosed locations that may or may not have included Mr. Cuomo's work site, and pursuant to some undisclosed terms, "Crane Co. made and supplied equipment, including valves, for Navy ships under contracts between Crane Co. and the shipyards and/or the United States of America, specifically the Navy Department" [A-47]. Fatal to Crane's ability to meet its jurisdictional burden in this case, however, neither Mr. Pantaleoni nor Crane itself has supplied even one such contract, and in all of its removal exhibits Crane has not made even one further statement about the nature of any such government contracts.

This Court's companion opinions in *In re "Agent Orange" Product Liability Litig.: Twinam v. Dow Chemical Co.*, 517 F.3d 76 (2d Cir. 2008), and *Isaacson v. Dow Chemical*

23

*Co.*, 517 F.3d 129 (2d Cir. 2008) (herein, the "*Agent Orange*" cases), have demonstrated the importance of defendant's producing at least some illustrative procurement documents or contracts when alleging the government contractor defense. In the *Agent Orange* cases, the allegedly injurious product had last been used "[m]ore than thirty-five years ago," 517 F.3d at 82, and the need for a showing of at least some representative contracts was not diminished by the intervening latency period.

In *Isaacson*, this Court deemed the defendants to have sufficiently alleged that the Government had "specified the formulation of Agent Orange, was aware that it contained dioxin, knew about the 'dioxin problem,' and controlled the method of warning." 517 F.3d 129, 134. The defendants further satisfied the "acting under color" requirement, because they established that a "special relationship" existed between the Government and defendants and, "[t]hrough their contracts with the Government," they had "assisted" or "helped carry out" the "duties or tasks of the federal superior" in supplying the dioxin-containing defoliant. *Id.*, at 137. The allegations, supported by the removal proofs, further established that, based on their federal contractual obligations, the defendants increased the concentration of the toxic components of the Agent Orange herbicides beyond the level defendants had made commercially available. *Id.*, at 138. Finally, this Court deemed defendants to have raised a colorable federal defense because "the defense clearly 'arose out of defendants' duty' pursuant to their contractual relationship with the Federal

24

Government." *Id.*, at 139 (quoting *Willingham, supra*, 395 U.S., at 407).

In asking whether [d]efendants have made the required showing," the Opinion in *Isaacson* addressing federal officer jurisdiction referred to the evidence marshaled in the district court and in its companion *Twinam* Opinion. *Isaacson*, 517 F.3d 129, 138-39. In *Twinam*, while not requiring defendants to have proffered "each and every contract," this Court repeatedly relied upon various of the contracts, these being indicative of the terms and conditions under which defendants supplied their products to the Government. *See Twinam*, 517 F.3d 76, 83 ("many of the contracts were subjected to various government directives entered pursuant to the Defense Production Act of 1950 . . . . The contracts required that the chemicals be nearly 100% pure"), 88 (addressing plaintiffs' claim that "Agent Orange procurement contracts contained no specifications regarding the defective feature, dioxin"), 89 (addressing "the Agent Orange specifications that are contained in the contracts"), 93 (continued focus on the content of "the government's contractual specifications"), 96 (noting that, "[i]n *Boyle*, the alleged state law duty of care was 'precisely contrary to the duty imposed by the government contract'"), 97 (examining whether the government received "anything other than the proportions and purity levels called for by the terms of the contracts"); *see also Smith v. Xerox Corp.*, 866 F.2d 135, 138 (5th Cir. 1989) ("Although Xerox failed to produce complete specifications for the original VIPERS it manufactured, Xerox did produce a listing of those specifications, as well as a copy

25

of the original government performance criteria dictating the environmental specifications . . ., and a production contract furnished by Xerox for a series of VIPERS containing specific reference to government-approved specifications").

Indeed, recently, in the wake of the Seventh Circuit's ruling in *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012), discussed below, the district court in *Horrie v. A.W. Chesterton Co.*, № 13 C 8161, 2014 U.S. Dist. LEXIS 68847 (N.D. Ill., May 19, 2014), granted plaintiff's motion to remand the action to state court, explaining:

> The problem with Crane's supporting documentation is that it is completely short of specifics applicable to this case.  All we know for sure is that Crane at some time supplied the Navy (or a Navy contractor) with valves which were incorporated in the construction of Navy vessels. . . .  Crane has not produced any contracts under which it supplied valves or anything else to the Navy.  It has not established that the Navy made any specific requirements as to warnings or prohibited any specific warnings for any valves it may have obtained from Crane. And it has not established that, if there were in warning requirements of the Navy, that they conflicted with Illinois tort law.  Its witness, Pantaleoni, did not work for Crane at the time the products were manufactured and did not state what efforts he undertook to find actual documentation.

2014 U.S. Dist. LEXIS 68847, at *10-11.

Absent Crane's proffer of a single procurement document or contract in the present action, it is not possible to determine under what terms Crane may have supplied to the Navy any of the asbestos-containing valves to which Mr. Cuomo may have been injuriously exposed.  As Admiral Sargent admitted, "[a]n acquisition

26

contract typically invokes many different MILSPECs, . . . Taken together, the contract and the *incorporated* materials present all details of what the Navy requires" [A-125 (emphasis added)]. Absent a single contract, it is impossible to arrive at a conclusion about what the Government may have specified, whether it actually may have played any role in the method of warning, whether a "special relationship" existed between the Government and defendant, and so forth. Absent any such evidence, Crane cannot fulfill its burden of showing that the Navy was colorably responsible for Crane's failure to warn concerning product hazards. *See, e.g., Sublett v. Air & Liquid Systems Corp.*, № 11-433-GPM, 2011 U.S. Dist. LEXIS 70908, at *6-7 (S.D. Ill. June 30, 2011) ("In support of its claim of federal officer jurisdiction GE has submitted to the Court an affidavit given by Ben J. Lehman, a retired USN rear admiral who served as a ship superintendent in the USN and who claims in that capacity to have had personal involvement with the supervision and oversight of ship construction as well as ship alterations and equipment overhauls. . . . In the past the Court has attached little significance to such evidentiary material, unaccompanied as it is by exemplar contracts between the USN and its contractors or pertinent regulations promulgated by the USN or another responsible agency"); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 200 (D. Mass. 2008) ("McDonnell Douglas also relies on affidavits by two employees . . . who state that the company had no authority to place markings on the aircraft or components, or to alter the

27

content of the equipment manuals. . . . Significantly, [they] do not cite any

contractual provisions buttressing their claims").


**B.   The Specifications in the Record Were Not in Conflict With Crane's State Law Duty to Warn**

In all events, even assuming *arguendo* that Crane had contracts with the Navy

for the supply of the asbestos-containing valve products that harmed Mr. Cuomo,

that Crane supplied injurious products pursuant to those contracts, and that the

contracts somehow incorporated every specification in the record and only those

specifications, Crane would still not have met its burden of establishing federal

officer jurisdiction in this failure-to-warn products liability case.

The Supreme Court instructed in *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988):

> That the procurement of equipment by the United States is an area of uniquely federal interest does not, however, end the inquiry. That merely establishes a necessary, not a sufficient, condition for the displacement of state law. Displacement will occur only where, as we have variously described, a "significant conflict" exists between an identifiable "federal policy or interest and the (operation) of state law," . . . or the application of state law would "frustrate specific objectives" of federal legislation . . . . [C]onflict there must be.

487 U.S. at 507-08; *In re Brooklyn Navy Yard Asbestos Litig. (Joint Eastern & Southern Dist.*

*Asbestos Litig.*, 971 F.2d 831, 839 (2d Cir. 1992) ("The military contractor's defense is

premised on federal displacement of state law where state law significantly conflicts

with the federal interest embodied in the federal government's sovereign immunity for discretionary functions").

The specifications in the record, even assuming their specific relevance to Crane's asbestos-containing valve products, do not establish a "significant conflict" with state tort law and the duty to warn of known and foreseeable ultrahazardous product defects. The federal interest simply did not conflict, or in any way interfere, with Crane's state law duty to warn. Quite the contrary, as one New York state court has found, "the evidence [is] that under certain circumstances the Navy not only permitted, but required, cautions and warnings as to other types of equipment. Thus, Crane has failed to establish that the Navy exercised its discretion as to warnings or that there was a conflict with state warning requirements." *In re New York City Asbestos Litig.: Dummitt v. A. W. Chesterton*, 960 N.Y.S.2d 51, 2012 N.Y. Misc. LEXIS 4057, at *45-46 (N.Y. Sup. Ct., Aug. 20, 2012).

As stated by the district court in *Hilbert,* "On review of the evidence, there is simply no basis upon which the Court can conclude that a conflict existed between the federal contracts and the defendants' state-law duty to warn. . . . Although they claim that the government dictated the text of non-asbestos warnings, they do not offer proof of that process." *Hilbert, supra*, 529 F. Supp. 2d 187, 202. In ordering the case remanded to state court for lack of federal officer jurisdiction, the *Hilbert* court continued:

29

On the facts of this case, the causal inquiry is closely tied to whether the
government issued reasonably precise specifications as to the warnings.
If the government did issue reasonably precise specifications and the
defendants obeyed them, then the federal contractual obligation caused
the plaintiffs' harm. The converse is also true: if the government did not
issue reasonably precise specifications as to the warnings, so that the
defendants could have simultaneously complied with the contractual
obligations and the state-law duty to warn, then the plaintiffs' harms
were not caused by the defendants' contractual responsibilities. Thus,
having concluded that the defendants have not shown reasonably
precise specifications as to the warnings, the Court also finds that the
defendants have not shown a causal nexus between their contractual
obligations and the plaintiffs' alleged injury.

*Id.*, at 203; *see also In re Asbestos Litig.: Seitz v. Adel Wiggins Group*, 661 F. Supp. 2d 451,

455 (D. Del. 2009) ("The court finds there is no evidence of record that the U.S.

Navy prohibited Northrop Grumman or Bell from, or otherwise directed defendants

related to, issuing warnings"); *Fortier v. AMPCO-Pittsburgh Corp.*, № 3:07-cv-00005

(WWE), 2007 WL 735703, at *2 (D. Conn. Mar. 7, 2007) ("Defendants, therefore,

were free to include warnings not dictated by the Navy").

Similarly the district court in *Granier v. Northrup Grumman Ship Sys.*, № 06-3738

Section "L"(1), 2008 U.S. Dist. LEXIS 103245 (E.D. La. Dec. 12, 2008), granted

plaintiffs' motion to remand the case to state court. The *Granier* court explained that

"the specifications under the contract specified technical parameters, and only had

more general references to safety regulations. The federal government provided no

direction on warnings when using asbestos, and further did not prevent Avondale

30

from taking its own safety precautions above the minimum standards incorporated in the federal contracts. Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims." 2008 U.S. Dist. LEXIS 103245, at *9-10. *Granier* also thereby attests to the critical need for a private defendant removing on federal officer grounds to proffer some evidence of the actual contract that governed its relationship with the Government.

Also apropos of the present case, the district court in *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009), explained that the removing defendants:

> together submitted volumes of evidence seeking to show that the Navy would not have permitted them to warn about the dangers of asbestos, if they had tried. But the Court's decision [granting remand to state court] rests ultimately on what is missing from the record. The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings. All told, the manufacturers do not claim that the Navy ever offered them any guidance on asbestos warnings, nor that they themselves ever contemplated warning about the dangers of asbestos.

614 F. Supp. 2d 129, 137.

31

In its Brief, Crane itself concedes that its burden, in establishing federal officer jurisdiction, was to demonstrate that it "would have violated the government's directive (and its contract with the government) by including unapproved warnings" [D/B, at 28 (citing *Getz v. Boeing Co.*, 654 F.3d 852 (9th Cir. 2011)). This is precisely what Crane has been unable to show, both because it has supplied no contract,[13] and because it has not proffered a single specification under which, even if incorporated into any such contract, Crane would have been in violation had it supplied an asbestos warning.

The next section will further explain why remand decisions such *Holdren, Granier,* and *Hilbert*, as well as Judge Scheindlin's well-considered decision below, correctly deemed the evidence proffered by the removing defendants to have insufficiently established a colorable government contractor defense against the plaintiff's state law failure-to-warn claims.

## II.   CRANE FAILED TO PROVE ANY OF THE THREE *BOYLE* ELEMENTS REQUISITE TO ESTABLISHING A CONFLICT

Requisite to establishing a colorable government contractor defense, hence federal officer jurisdiction, the defendant must show a "significant conflict" between

---

[13]     *E.g., Getz,* 654 F.3d 852, 861-62 ("Under the terms of its contract with the Army, Honeywell was required to construct the MH–47E's engine pursuant to 'Military Specification AV–E–8593D' . . . . We also reject the notion that the *approved* specifications [under the contract] constitute mere performance criteria, instead of design specifications") (emphasis added).

an identifiable federal policy or interest and the operation of state law, pursuant to the ruling in *Boyle*. To show such a conflict, and hence to assert this federal defense, a defendant must prove three elements: (1) "the United States approved reasonably precise specifications" for the military equipment supplied by the contractor; (2) "the equipment conformed to those specifications; and (3) the [military contractor] warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States." *Boyle, supra,* 487 U.S. 500, 512.

In a failure to warn case, the defendant must establish the first prong of this test by showing that "whatever warnings accompanied a product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product." *In re Joint Eastern and Southern Dist. New York Asbestos Litig.: Grispo v. Eagle-Picher Indus., Inc.*, 897 F.2d 626, 631 (2d Cir. 1990) ("*Grispo*").

To prove the second prong of the military contractor defense, the defendant must show that the products it supplied to the Navy conformed to the Navy's specifications. "As a matter of law, satisfaction of [this element] of the government contractor defense requires accurate conformity with specifications or government approval of the delivered product." *In re "Agent Orange" Product Liability Litig.: Isaacson v. Dow Chemical Co.*, 304 F. Supp. 2d 404, 434-35, *aff'd*, 517 F.3d 129 (2d Cir. 2008). Essentially, GE must demonstrate that the navy "received exactly what it sought."

33

*Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 89 (2d Cir. 1993). However, "[t]he conformity prong of *Boyle* is not satisfied if the contractor fails to substantially follow the government's requirements, and the government is not aware of the deviations." 304 F. Supp. 2d 404, 435.

The third prong of the military contractor defense requires Crane to show that, at the time of Mr. Cuomo's alleged exposure to asbestos, Crane did not fail to warn the Navy of any dangers associated with asbestos that were known to Crane but not to the Navy. *Boyle*, 487 U.S. at 512. In this case, there is no dispute that Crane did not warn anyone or any entity about the hazards associated with its asbestos-containing products. However, this third *Boyle* element "ensures the manufacturer does not withhold useful safety information." *Ruppel v. CBS Corp., supra*, 701 F.3d 1176, 1183 (7ᵗʰ Cir. 2012). A contractor may satisfy this element if "there is nothing [the contractor] knew about asbestos that the Navy did not." *Id.*, at 1186.

## A.   <u>Crane Did Not Establish the First *Boyle* Element</u>

The documents in the record do not support Crane's jurisdictional claim that the Government approved reasonably precise specifications such that Crane was required to omit health and safety warnings for its asbestos-containing products, or that the Navy approved of any such omissions on Crane's part. As this Court emphasized in *Grispo*:

34

As the *Boyle* Court pointedly explained, "Conflict there must be." *Boyle*, 108 S. Ct. at 2516. To us, a plaintiff's ability to pursue a failure-to-warn claim when *Boyle* may foreclose a design defect claim is not indicative of some loophole inadvertently left open by *Boyle*, but rather demonstrates a crucial lack of the necessary conflict between state and federal warning requirements. Indeed, it is not unreasonable to imagine that, as in this case, government contracts often may focus upon product content and design while leaving other safety-related decisions, such as the method of product manufacture or the nature of product warnings, to the contractor's sole discretion. In these instances, state law design requirements are displaced, although state law warning requirements are not. . . . In a failure-to-warn action, where no conflict exists between requirements imposed under a federal contract and a state law duty to warn, regardless of any conflict which may exist between the contract and state law design requirements, *Boyle* commands that we defer to the operation of state law.

897 F.2d 626, 631.

Importantly, the sort of indicia the courts rely upon to show government involvement in product design must parallel those used to determine whether the Government concerned itself with product health warnings. Jurisprudence involving the government contractor defense is far more developed in the area of design defect than failure to warn. Determining the sufficiency of jurisdictional allegations and proofs when the product defect is alleged to reside in its design, on the one hand, and when it is alleged to reside in the lack of warnings on the other, must be symmetrical.[14]

---

[14] *See generally Sage v. Fairchild-Swearingen Corp.*, 70 N.Y.2d 579, 585 (1987) ("Under
(continued...)

35

In *Twinam*, for instance, this Court explained that the first two *Boyle* requirements "'assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself.'" *Twinam*, 517 F.3d 76, 88 (quoting *Boyle*, 487 U.S. 500, 512). The three *Boyle* elements dovetail, such that if the Navy did not dictate that warnings be omitted, and if the Navy was not aware of the hazard of asbestos gaskets and packing in Crane's valve equipment, then it clearly cannot be said that the absence of warnings regarding Crane's valve products "was considered by a Government officer" upon receipt of such products. The Navy simply would not have been aware of any reason to include such warnings. In its removal papers, Crane has admitted, and its expert Forman has even documented, that the Government was wholly unaware that asbestos packings and gaskets in its valve products could constitute a health hazard [A-1138-39].

Also in *Twinam*, this Court stressed that "[d]efendants asserting the defense must demonstrate that the government made a discretionary determination about the material it obtained that relates to the defective design feature at issue. When the government merely rubber stamps a design, or where the government merely orders a product from stock without a significant interest in the alleged design defect, the government has not made a discretionary decision in need of protection, and the

_____

[14](...continued)
familiar rules, a product may be defective because of a manufacturing flaw, design defect or because of the inadequacy or absence of warnings for the use of such product").

36

defense is therefore inapplicable." 517 F.3d at 90 (omitting citations).

When the absence of warnings constitutes the product defect, the defect must be treated the same way in determining whether the defendant has sufficiently alleged a government contractor defense for purposes of federal officer jurisdiction. In other words, the defendants asserting the defense must demonstrate that the government made a discretionary determination about the omission of a warning. When the Government merely rubber stamps or accepts, without significant interest, the lack of a warning (possibly because the Government is unaware that the product is unsafe), "the government has not made a discretionary decision in need of protection, and the defense is therefore inapplicable." *Id.*

Again in *Twinam*, it was significant to this Court that the Agent Orange defendants had asserted that the injurious herbicides "were not commercially available at the same high concentrations as that contained in Agent Orange." *Id.*, at 90. Although this Court did not require that the product as supplied under the government contract be altered or different from its commercial counterpart, the point was that the Government must at least have "independently and meaningfully review[ed] the specifications such that the government remains the agent of decision." *Id.*, at 91 (omitting citations).

In the present case, there is absolutely no basis for finding that the Navy independently and meaningfully reviewed the absence of warnings regarding Crane's

37

valve equipment, or that the Government was in any way "the agent of decision" with regard to that failure to warn. The evidence in the record is wholly insufficient to conclude, as a jurisdictional fact, that the government made a discretionary determination about the omission of a warning with regard to Crane's asbestos-containing valve products. *Cf. Ruffin v. Armco Steel Corp.*, 959 F. Supp. 770, 772, 776 (S.D. Tex. 1997) (granting remand to state court, rejecting defendant's claim that federal officers' control over the building of steel plant "presumptively provides it with sufficient basis for removal under §1442(a)(1)," finding "that although Armco has proven that DPC [Defense Plant Corporation] supervised and extensively monitored the construction of the Mill, Armco has failed to demonstrate that DPC exercised this same degree of control with respect to safety precautions that allegedly should have been taken to warn employees of the hazards associated with asbestos exposure. There was no evidence to show that DPC prevented Armco from issuing adequate safety warnings or that the government enacted or even considered enacting its own program or guidelines to cover workplace safety . . . Without such proof, Armco cannot satisfy the statutory requirements for removal under §1442(a)(1)"), *vacated on other grounds*, № H-96-4480, 1999 U.S. Dist. LEXIS 23191 (S.D. Tex. Jan. 29, 1999).

Quite the contrary, Navy specifications in the record (which may or may not have any connection to Crane's government contracts) instruct the manufacturer to

38

provide "clearly worded" warnings "so as to be readily understandable to relatively inexperienced personnel" [A-926].  They require that contractors supply personal injury warnings with their products as may be "consistent with real need" [A-974]. They refer to labels and markings expected to be supplied by the product manufacturers to safeguard workers from toxic dusts  [A-1705].  And they emphasize that the manufacturers were expected to affix health warning labels as "governed by State and Federal laws and regulations," including those recommended by the Manufacturing Chemists' Association's warnings guides, which pertained to hazardous industrial dusts such as asbestos [A-1447, 1678].[15]

Accordingly, neither Crane's allegations in removing this case from state to federal court, nor the record as a whole, supports Crane's jurisdictional claim that the Government approved reasonably precise specifications such that Crane was required to omit health and safety warnings for its asbestos-containing products, under the first *Boyle* prong.  For this reason alone, Crane did not sufficiently demonstrate a "significant conflict" between state law warnings requirements and its federal contractual obligations, if any.

---

[15]        *See supra* note 5.

39

**B.    Crane Did Not Establish the Second *Boyle* Element**

Crane failed to show that the Navy "received exactly what it sought," *Lewis, supra,* 985 F.2d 83, 89, namely, a product that omitted any warnings about its ultrahazardous nature, such warnings deemed vitally necessary under state tort law. For Crane failed to show that this is what the Navy sought.

Dr. Forman's strained speculation that the Navy invited manufacturer warnings solely with regard to hazards that might cause an "immediate" health effect [A-1137], is insupportable, illogical, and contrary to the documentation in the record. Those documents demonstrate the Navy's expectation, and requirement, that product suppliers warn about the effects of such substances as toxic dusts [A-1705], radiation [A-1034, 1108], and chemical hazards [A-1447].

If the Navy did not specifically approve, either expressly or by implication, the Crane's failure to warn about a hazard known to the Navy, then it cannot be said that the Navy approved that omission.  *See Brinson v. Raytheon Co.*, 571 F.3d 1348, 1358 (11th Cir. 2009).  "Defendants therefore must demonstrate that the product it delivered to the government was precisely what the government requested." *Twinam, supra*, 517 F.3d 76, 97.  This Crane cannot do, with regard to its asbestos-containing valve products lacking any safety warning.

40

## C.   Crane Did Not Establish the Third *Boyle* Element

There is no dispute that Crane did not warn the Navy or anyone about the hazards associated with its asbestos-containing products.  There is no dispute, for purposes of the present record, that Crane had full knowledge of those hazards.  Thus, Crane can satisfy the third *Boyle* element only if "there is nothing [the contractor] knew about asbestos that the Navy did not."  *Ruppel, supra,* 701 F.3d 1176, 1186.

As shown, however, Crane's own expert, Dr. Forman, clearly admitted that the Navy had no appreciation of the hazards associated with Crane's asbestos-containing valve products.  According to Dr. Forman, "I am aware from my research and from my personal experience in the Navy that these materials were regarded as negligible sources of asbestos exposure" [A-1138].  He then went on to quote from a 1968 Navy memorandum stating that  asbestos in gasket and packing materials, "incorporated in the finished assembly such as a valve, . . . are not considered to be a significant health hazard" [A-1138-39].

Dr. Forman also emphasized that the Navy's lack of any awareness of a danger from asbestos in gaskets and packing "was reaffirmed" in literature asserting there was "(n)o health hazard in forms used in shipyard applications" [A-1139].  Moreover, the Navy subscribed to the view that "'(a)sbestos fiber' and '(c)ompressed asbestos fiber' present '(n)o health hazard in forms used in shipyard applications'" [*id.*].

41

Consequently, said Dr. Forman, there was a "lack of concern for asbestos exposure from asbestos-containing gaskets and packing expressed in Navy documents" [A-1139-40].

Crane knew more than this about the dangers of its products. *See, e.g., Quirin v. Lorillard Tobacco Co.*, № 13 C 2633, 2014 U.S. Dist. LEXIS 18744, at *26-28 (N.D. Ill. Feb. 14, 2014) ("the court concludes that a reasonable jury could find facts that imposed upon Crane Co. a duty to warn Mr. Quirin about asbestos exposure resulting from gaskets and packing used with its valves . . . . even if it did not supply the gaskets and packing actually encountered by Mr. Quirin. Crane Co. was aware that its valves would be used in high heat applications, and it provided specifications for such use. Asbestos was used in gaskets and packing because of its resistance to heat; that is why Crane Co. valves were supplied with asbestos-containing materials in the first place. . . . Given these facts, a reasonable jury could find that Crane Co. had a duty to warn about the hazards of asbestos exposure resulting from work on its valves"); *Sweredoski v. Alfa Laval, Inc.*, C.A. № PC-2011-1544, 2013 R.I. Super. LEXIS 185, at *14 (Oct. 21, 2013) ("There is evidence in this case to suggest that Crane not only knew that the asbestos in its valves would need to be replaced, but also that Crane actively encouraged its customers to replace the original asbestos with more asbestos. . . . Crane may be held liable for failing to warn users that its products could be dangerous when used as intended").

42

Indeed, packings and gaskets containing asbestos, installed in Crane's valve products, were an enormous health hazard. As stated previously, Crane could not be subject to failure-to-warn products liability unless it had knowledge superior to what Dr. Forman claims for the Navy. For Crane's liability rests on its awareness, and the foreseeability to Crane, that deadly asbestos fibers would in fact be released during installation, use and/or maintenance of its valve equipment. Therefore, Crane's removal allegations on their face, by virtue of incorporating Dr. Forman's claims, effectively assert that the Navy did not know as much as Crane knew about the hazards of the Crane equipment.

Accordingly, Crane cannot satisfy the third *Boyle* prong. *Boyle* requires that to obtain the benefit of the government contractor defense, a contractor must inform the government about known "dangers in the use of the equipment." *Boyle, supra*, 487 U.S. at 512. Although the contractor need not disclose each and every known risk, Dr. Forman's admission establishes that Crane failed to inform the Navy of the one distinct, material risk at issue here – that ordinary use of its valve products in the field would result in the creation of an ultrahazardous asbestos dust condition.[16] This risk

---

[16]     *Cf.* Declaration testimony of Joseph H. Chilcote, project engineer in Navy's Material Standards Branch, at A-1644 ("Because time, resource and cost constraints made it impracticable for the Navy to develop the detailed expertise necessary to independently undertake its own product development, when my office was required by other Navy activities to procure a product or material, we invariably consulted with industry to determine product availability from preexisting commercial sources").

was "substantial enough to influence the military decision" of whether to accept Crane's valve products absent the sort of health and safety warnings it otherwise expected its product suppliers to include. *Twinam, supra*, 517 F.3d at 99. For this further reason, and for this reason alone, Crane has failed to sufficiently establish federal officer jurisdiction.

### III.  CRANE'S CLAIMS ON APPEAL ARE MERITLESS

Crane's own claims, in its Brief, are without merit. It relies heavily, for instance, on the Judge Scheindlin's Opinion in *Levy v. A. O. Smith Water Prods. Co.*, № 12-cv-05152-SAS, 2012 WL 2878140 (S.D.N.Y. July 13, 2012), and cites to this decision "*passim*" [D/B, at iv], for the proposition that "evidence indicating that a plaintiff was exposed to the asbestos products of the 'defendants' while in the Navy, in and of itself, was sufficient to support 'federal officer' removal" [D/B, at 3]. This interpretation of *Levy* of course contradicts Crane's own concession, mentioned above, that in removing this case to federal court Crane shouldered the burden of demonstrating that, had it provided a critically important health warning, this "would have violated the government's directive (and its contract with the government)" [D/B, at 28].

In all events, what Crane neglects to acknowledge is that, in *Levy*, the district court *granted* plaintiff's motion for remand to state court on timeliness grounds. That

matter therefore concerned solely an alleged procedural defect of untimely removal, and not subject matter jurisdiction. *See generally Kristzal v. Leavitt*, № 05-1173-CV-W-HFS, 2006 WL 1779015, at *1 (W.D. Mo., June 26, 2006).

The issue in a timeliness matter, as in *Levy*, is whether a defendant could intelligently have ascertained removability on the basis of its receipt a certain paper. 28 U.S.C. § 1446(b). The untimeliness motion in *Levy* merely asked whether, *assuming* subject matter jurisdiction otherwise existed, the removal was timely noticed. *See Polesky v. A. C. & S., Inc.,* № 98 CIV. 4841 (DLC), 1998 WL 633666, at *2 (S.D.N.Y. Sept. 15, 1998) ("The Court concludes that the Polesky's have demonstrated a [timeliness] defect in removal procedure warranting remand of this case to the New York State Supreme Court. . . . The Polesky's having furnished sufficient support for this argument, . . . the Court grants the motion upon this ground, and *does not address the Polesky's claim regarding removal jurisdiction under Section 1442(a)(1)*") (emphasis added).

More significantly, Crane relies on the Seventh Circuit's determination in *Ruppel, supra*, that government contractor Westinghouse Corporation (now CBS Corp.), adequately established federal officer jurisdiction regarding its supply to the Navy of asbestos-containing turbine equipment and asbestos insulation materials. *Ruppel*, 701 F.3d 1176, 1185 ("an insulation supplier (like Westinghouse)"). The *Ruppel* Court principally addressed the plaintiff's design defect, or "use-of-asbestos" causes of action. 701 F.3d at 1179-85. The Court noted that, with respect to the

45

Navy's exercise of discretion in this regard, the evidence showed that "the United States not only 'approved reasonably precise (turbine) specifications' with which CBS's products conformed . . ., the Navy explicitly required asbestos, making it impossible to comply with the Navy and state tort law simultaneously." 701 F.3d at 1184 (citing *Boyle*, 487 U.S. 500, 512).

As the *Ruppel* Court stated, "[i]f CBS has a colorable defense as to either claim [*i.e.*, design defect/use-of-asbestos or failure-to-warn], then the entire case is removable." 701 F.3d at 1182. Having found a colorable government contractor defense on the use-of-asbestos claims, the Court was therefore not obliged to address the failure-to-warn issue. Nevertheless, the Opinion concludes with a few paragraphs on Ruppel's failure-to-warn claims.

In this portion of the *Ruppel* Opinion, the Seventh Circuit noted that its standard diverged from that in the Second Circuit. Whereas this Court emphasized in *Grispo* that, under *Boyle's* significant conflict standard, "[t]he contractor must show that whatever warnings accompanied a product resulted from a determination of a government official . . . and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product"; *Grispo*, 897 F.2d 626, 630; the Seventh Circuit "expressly rejected this standard . . . ." *Ruppel*, 701 F.3d at 1185 n.2.

In all events, the *Ruppel* Court found that, on the record in that case, "CBS complied with the Navy's warning requirements (by affixing none) because the Navy

46

prohibited warnings." 701 F.3d at 1186; *see also Horrie, supra*, 2014 U.S. Dist. LEXIS 68847, at *12 (deeming *Ruppel* "inapplicable" because, *inter alia*, in that case the removing defendant CBS proffered "the actual purchase order"). No such finding is possible in the present case.

*Ruppel* is further distinguishable from the present case. For nor did Dr. Forman's affidavit in *Ruppel* admit that the Navy was unaware that the asbestos products supplied by the contractor therein, asbestos-laden insulation and turbines insulated with asbestos, were hazardous. In the present case, in contrast, Dr. Forman has admitted that the Navy was wholly unaware of any health hazard associated with the type of products supplied by the instant removing defendant, Crane Co. [A-1138-40]. In *Ruppel*, the Seventh Circuit expressly concluded, based on the record therein, that "there is nothing CBS knew about asbestos that the Navy did not." 701 F.3d at 1186. That conclusion is not possible, and would directly contradict the evidence, in the instant case.

There is one further decision, issued after Crane had filed its Brief, that plaintiff anticipates Crane will reference in its Reply Brief. That is the Ninth Circuit Opinion in *Leite v. Crane Co.*, № 12-16864 & № 12-16982, 2014 WL 1646924 (9th Cir. Apr. 25, 2014). The *Leite* Court indicated its agreement with the Seventh Circuit, hence its departure from this Court's language in *Grispo*, on the standard for assessing failure-to-warn removal jurisdiction. Nor was the *Leite* Court called upon to address

47

several of the issues raised above in plaintiff's present Brief.

## **CONCLUSION**

For all of the foregoing reasons, plaintiff respectfully submits that the district court's Order issued November 1, 2013, should be affirmed.

Dated:        June 5, 2014

                                  Respectfully submitted,

                                  WEITZ & LUXENBERG, P.C.

                                  //ss// *Alani Golanski*

                                  By:_____
                                      Alani Golanski [AG-8165]
                                  agolanski@weitzlux.com
                                  700 Broadway
                                  New York, New York 10003
                                  Tel: 212-558-5500
                                  Facsimile: 212-344-5461
                                  *Attorneys for Plaintiff-Appellee*

48

### CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(A)(7)(C)

The foregoing brief was prepared on a computer using WordPerfect 10. A proportionally spaced typeface was used, as follows:

        Name of typeface:  Garamond

        Point size:  14 point text; 12 point footnotes

        Line spacing:  Double

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service, certificate of compliance, is 11,559, as calculated by the WordPerfect word count feature.

Dates:      New York, New York
          June 5, 2014


                WEITZ & LUXENBERG, P.C.


             //ss// *Alani Golanski*
             _____
             Alani Golanski [AG-8165]